CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 9, 2013

LETTER TO COUNSEL:

    RE:    *Etta Mae McCall v. Commissioner, Social Security Administration*;
               Civil No. SAG-11-2340

Dear Counsel:

    On August 22, 2011, the Plaintiff, Etta Mae McCall, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Ms. McCall's reply. (ECF Nos. 25, 34, 35). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will deny both motions, vacate the Commissioner's denial of benefits, and remand this matter for further proceedings consistent with this opinion. This letter explains my rationale.

    Ms. McCall filed her claims for benefits on August 22, 2006, claiming disability beginning on April 19, 2005. (Tr. 40-42). Her claims were denied initially on January 17, 2007, and on reconsideration on August 7, 2007. (Tr. 36-37). An Administrative Law Judge ("ALJ") held a hearing on March 11, 2009. (Tr. 359-95). On May 8, 2009, the ALJ issued an opinion denying benefits. (Tr. 17-31). The Appeals Council denied Ms. McCall's request for review, (Tr. 6-9), so the ALJ's decision constitutes the final, reviewable decision of the agency.

    The ALJ found that Ms. McCall suffered from the severe impairments of neck injury, obesity, depression, and anxiety. (Tr. 19). Despite these impairments, the ALJ determined that Ms. McCall retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should generally avoid working overhead or pushing and pulling with the upper right extremity, and should have handling, fingering, and feeling with the right hand frequent but not constant, all posturals are occasional, but she should avoid climbing ladder, rope, or scaffold. She is further limited to . . . simple, unskilled work, work with occasional contact with coworkers and the general public, work not at a production pace, and work that is low stress, defined as only occasional change in the work setting.

(Tr. 26). After considering testimony from a vocational examiner ("VE"), the ALJ determined that Ms. McCall could perform work existing in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 30-31).

On appeal, Ms. McCall makes three primary arguments: (1) that the ALJ failed to consider adequately her mental impairments; (2) that the ALJ erred at Step Two by failing to find her Arnold-Chiari malformation and headaches to be severe; and (3) that the ALJ failed to properly consider her obesity. I find many of Ms. McCall's arguments unpersuasive. However, I agree that the ALJ mishandled her assignment of weight to the opinion of Dr. Kenneth Wessel. Remand is therefore required.

Turning first to the unpersuasive arguments, Ms. McCall asserts that the ALJ erred at Step Two in failing to classify her Arnold-Chiari malformation and headaches as severe impairments. Pl. Mot. 12-16; Pl. Reply 6-8. The claimant need only make a threshold showing at Step Two that an "impairment or combination of impairments ... significantly limits [his or her] physical or mental ability to do basic work activities" for the ALJ to move onto the subsequent steps in the five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(c). The claimant bears the burden of proving that her impairment is severe. *See Johnson v. Astrue*, Civil Action No. PWG–10–3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). The ALJ acknowledged Ms. McCall's diagnosis of "mild Arnold-Chiari malformation" and associated complaints of headaches. (Tr. 21). However, the ALJ noted that treatment for headache pain was in combination with treatment for neck and shoulder pain, that there is "minimal clinical evidence to corroborate or support any finding of significant vocational impact related" to the headaches, and that Ms. McCall had not sought evaluation from a neurologist as suggested. *Id.* A mere diagnosis of an ailment, without a conjunctional showing of limitation of work capacity, does not automatically qualify an individual for disability benefits. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 229-30 (4th Cir. 2011) (quoting in part *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("However, medical conditions alone do not entitle a claimant to disability benefits; '[t]here must be a showing of related functional loss.'")). After review of the relevant records, I concur with the ALJ that the records do not indicate functional loss specifically attributable to headaches, outside what is already associated with Ms. McCall's neck and shoulder pain. Moreover, I find that the ALJ adequately considered Ms. McCall's headaches not only at Step Two, (Tr. 21), but in the RFC analysis, (Tr. 26-27). The record supports the ALJ's determination that Ms. McCall achieved "good pain relief with medication[.]" (Tr. 27).

Ms. McCall also argues that the ALJ failed to consider her obesity in combination with her other physical and mental impairments. Pl. Mot. 22-25. Ms. McCall has not cited, and I have not found, any evidence of record suggesting that Ms. McCall's obesity created functional limitations other than those caused by her other impairments. The claimant carries the burden of showing how her obesity affected her ability to perform work-related functions. *See Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995) (finding that the applicant bears the burden of production and of proof during the first four steps of the inquiry). Obesity is known to

exacerbate other health issues, including musculoskeletal problems. However, the ALJ already adjusted the RFC to account for those limitations. Moreover, while Ms. McCall suggests that her mental health issues contributed to her obesity due to "comfort eating," Pl. Mot. 24, the fact that the obesity may be caused by other impairments does not create additional functional restrictions. Because Ms. McCall has not identified how her obesity limited her to a greater extent than the ALJ found, she has failed to carry her burden. *See Brown v. Astrue,* No. JKS-09-1792, 2011 WL 129006, at *2 (D. Md. Jan. 14, 2011) ("Having identified no evidence to suggest that his obesity caused greater limitations than the ALJ assigned, [the plaintiff] has shown no basis for remand.").

Ms. McCall advances several distinct arguments regarding the ALJ's consideration of her mental impairments. First, she submits that the ALJ essentially rejected all of the medical opinions, leaving her RFC determination unsupported by medical evidence. Pl. Mot. 8-12, 17-18. However, the ALJ's evaluation of much of the medical evidence and related opinions is supported by substantial evidence.

Ms. McCall correctly notes that Dr. O'Donnell performed extensive testing during his consultative examination. Pl. Mot. 9. However, the results of that testing were almost all normal. (Tr. 145). Dr. O'Donnell's opinion suggests that Ms. McCall is unable to perform competitive employment largely because of her physical symptoms, not because of the results of psychological testing. *Id.* The ALJ's analysis, then, that Dr. O'Donnell's findings were based solely on Ms. McCall's complaints is accurate. (Tr. 23). Moreover, the ALJ correctly noted that, at the time of Dr. O'Donnell's evaluation in September, 2006, Ms. McCall had not sought any mental health treatment other than medications from her primary care doctor, which undermines the alleged severity of her condition. *Id.*

With respect to Upper Bay Counseling, there are treatment notes indicating that Ms. McCall had three appointments between February 20, 2007 and March 8, 2007, along with prior records of treatment in 2001 and 2002. (Tr. 149-71). Although Ms. McCall's counselor prepared a "treatment summary" on April 24, 2007, there are no notes to indicate that Ms. McCall was actually evaluated on that date. (Tr. 151). The ALJ properly noted "no evidence of mental treatment after March, 2007." (Tr. 24). The "treatment summary" does not contain a medical opinion as to Ms. McCall's ability to perform work-related functions. (Tr. 151). Ms. McCall appears to suggest that the assigned GAF scores alone indicate marked limitation in her ability to work. Pl Mot. 10-11. However, "a GAF score is not determinative of whether a person is disabled. Rather, the Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings." *Melgarejo v. Astrue,* No. JKS 08–3140, 2009 WL 5030706, at *2 (D. Md. Dec. 15, 2009) (*citing* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). While I agree that the ALJ cited no evidence to support her speculative assertion that Ms. McCall's GAF scores were carried over from her prior treatment in 2001-2002, because GAF scores are not determinative, the error is harmless. Nothing in the treatment records from Upper Bay

Counseling precludes Ms. McCall from performing work in accordance with the RFC.

Ms. McCall also protests the ALJ's consideration of the report from consultative examiner Dr. Welch-Blair. Pl. Mot. 11-12. Once again, Ms. McCall relies on the GAF score assigned by Dr. Welch-Blair, as opposed to the narrative conclusions outlined in the report.[1] *Id.* Although Dr. Welch-Blair assigned a GAF score of 25-30, she noted that Ms. McCall arrived on time for the appointment, spoke clearly, calmly, and coherently, had organized thoughts, good insight and judgment, and was competent to handle benefits if awarded. (Tr. 175). Dr. Welch-Blair also found "no evidence of loose associations, flight of ideas, no psychotic process, no history of hallucinations or paranoia, no history of manic symptoms," along with no suicidal ideation, no intent or plan, and no homicidal ideation. *Id.* I therefore concur with the ALJ's conclusion that Dr. Welch-Blair's assigned GAF score does not appear consistent with her narrative describing the mental status examination.

However, I agree that the ALJ erred in her analysis of the state medical consultant opinions. The ALJ first discussed Dr. Kenneth Wessel's opinion at Step Three, but seemingly discounted his findings because they were "made at the time of the initial determination." (Tr. 24). That statement, however, is inaccurate as Dr. Wessel's reports were dated August 7, 2007, and the initial denial was issued in January, 2007. *Compare* (Tr. 182-99) *with* (Tr. 36). Later in the decision, the ALJ indicated that she assigned great weight to the opinion of a "State agency medical consultant . . . in the determination letter dated August 8, 2007[.]" While the Commissioner argues that the ALJ meant to refer to Dr. Wessel's August 7, 2007 opinion, Dr. Wessel's reports focused on Ms. McCall's psychiatric issues. The ALJ states that the consultant found Ms. McCall had satisfactory fine and gross motor skills, but the Psychiatric Review Technique and Mental Residual Capacity Assessment make no mention of her physical capabilities. *Compare* (Tr. 28) *with* (Tr. 182-99). Further, I am unable to locate in the record the report or opinion letter to which the ALJ meant to refer. Although Dr. Wessel found Ms. McCall ultimately capable of work, I cannot find that the ALJ's analysis was based on substantial evidence in the face of such obvious errors, especially in light of the fact that the ALJ assigned

---

[1] The difficulty with assigning significant weight to GAF scores is the fact that those scores are influenced by factors other than the simple severity of mental impairments. For example, GAF scores are affected by the person's physical health, which is properly considered by the ALJ using evidence from medical sources treating the physical issues. A person with less significant mental health conditions, but reporting serious physical impairments to the evaluating mental health provider, may have a lower GAF score. Moreover, GAF scores also include difficulties with occupational functioning. Inherently, an applicant for Social Security disability benefits has an unstable occupational situation, and therefore a GAF score may be lowered accordingly. For example, in assigning a GAF score to Ms. McCall, Dr. Welch-Blair cited alleged physical impairments including "Arnold-Chiari malformation, radiculopathy in right arm after suffering work related fall and crush injury, cervical vertebrae problems according to the patient; right humeral bruising according to the patient, chronic headaches which may be related to her Arnold-Chiari malformation. Also, carpal tunnel in her right hand and mitral valve prolapse." (Tr. 175-76). Dr. Welch-Blair also cited financial psychosocial stressors. (Tr. 176).

little to no weight to the remainder of the medical opinions pertaining to Ms. McCall's mental health. Remand, therefore, is warranted. In so holding, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. McCall is not entitled to benefits is correct or incorrect.

Ms. McCall also argues that the ALJ improperly evaluated her mental health impairment by failing to properly use the special technique. Pl. Mot. 13-15. When evaluating a claimant's mental impairments, the ALJ must follow a special technique outlined in 20 C.F.R. § 404.1520a(b) at each level in the administrative review process. The ALJ must document application of this technique in his decision. 20 C.F.R. § 404.1520a(e). The ALJ must first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether a medically determinable mental impairment exists. *Id.* § 404.1520a(b)(1). If a medically determinable mental impairment exists, the ALJ must rate the degree of functional limitation. *Id.* § 404.1520a(b)(2). To rate the degree of functional limitation, the ALJ must consider "all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." *Id.* § 404.1520a(c)(1). The ALJ must make findings as to the degree of restrictions, if any, in four areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.[2] *Id.* § 404.1520a(c)(3). Ms. McCall's conclusory assertion that "each consultative examination, treatment notes from Upper Bay Counseling, and GAF scores below 50, indicated marked limitations in each of the functional areas" is unsupported by the record. Pl. Mot. 14. As noted above, GAF scores are not determinative. The consultative examinations by Dr. O'Donnell and Dr. Welch-Blair, as discussed above, did not assign any degree of restriction in the particular functional areas. While I concur with Ms. McCall that the ALJ's analysis of her restrictions in concentration, persistence, and pace was sparse, even a "marked" finding in that single domain would not have altered the ultimate conclusion that Ms. McCall did not meet the listings. *See* 23 C.F.R. Part 404, Subpart P, App. 1, §§ 12.04 and 12.06 (requiring findings of marked restriction in at least two of the functional areas, or marked restriction in one area with repeated episodes of decompensation of extended duration). While the ALJ did not commit reversible error, on remand the ALJ should consider elaborating on the analysis of Ms. McCall's limitations in concentration, persistence, and pace.

Finally, Ms. McCall asserts that the ALJ failed to articulate the impact of her mental impairments on her RFC. Pl. Mot. 15-16. The RFC restrictions imposed flow logically from the findings the ALJ made in her opinion. However, if on remand, the ALJ finds further mental limitations, the RFC should be adjusted accordingly.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 25)

---

[2] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

and the Commissioner's motion for summary judgment (ECF No. 34) will be DENIED. The ALJ's opinion will be VACATED and the case will be REMANDED for further proceedings. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge